## Case No. 11,280.

### POPPENHUSEN v. FALKE et al.

[5 Blatchf. 46; 2 Fish. Pat. Cas. 213.] [1]

Circuit Court, S. D. New York. May 14, 1862.

PATENTS—VALIDITY — INFRINGEMENT — SCOPE OF REISSUE—INFRINGEMENT—USELESS ADDITION TO INVENTION.

1. The patent granted to L. Otto P. Meyer, December 20th, 1853 [No. 339], known as the "Grease Patent." is valid and has frequently been sustained by the courts.

2. The use of spirits of turpentine, with a small quantity of rubber dissolved in it. to produce the result attained by the use of the invention claimed in that patent, is an infringement of that patent.

3. The patent granted to L. Otto P. Meyer, April 4th, 1854 [No. 10.741]. and reissued August 16th, 1859 [No. 797], known as the "Tin-Foil Patent." is valid.

4. The invention, as described in the original "tin-foil patent," applied as well to flat sheets and plain surfaces. as to those which were moulded or wrought into irregular and configurated forms.

5. The reissued "tin-foil patent" embraces the use and application of all metal plates that are sufficiently flexible to be used in substantially the same way, with substantially the same results. that tin foil could be used. when applied not only to irregular, but to plain flat sheets

---

[1] [Reported by Hon. Samuel Blatchford. District Judge, and by Samuel S. Fisher. Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 5 Blatchf. 46, and the statement is from 2 Fish. Pat. Cas. 213.]

of the compound, and covers all plates that are sufficiently flexible to admit of their being rolled upon the compound, substantially in the manner described in the reissued patent, and so firmly united as to expel the air, and secure the adhesion of the plates and compound, through the process of vulcanization, without the necessity of other pressure or force.

6. The original invention of Meyer was co-extensive with such construction of the reissued "tin-foil patent."

7. The charge of infringement will not be avoided by making an unnecessary and useless addition to the invention.

8. It is no objection to the validity of a reissue, that the object of it was to extend the monopoly secured by the patent beyond the limits assigned to it by a judicial decision upon it in its original form.

[9. Cited in Blessing v. John Trageser Steam Copper Works, 34 Fed. 754, to the point that whether an improvement required inventive skill for its production is a question of fact, for the jury.]

[This was a bill in equity filed [by Conrad Poppenhusen] to restrain the defendants [Oscar Falke and others] from infringing the patents granted to L. Otto P. Meyer which are more particularly referred to in the reports of the cases of Poppenhusen v. New York Gutta-Percha Comb Co. [Cases Nos. 11,283, 11,281, and 11,282], and of Poppenhusen v. Falke [Case No. 11,279]. In the last named case, a motion for a provisional injunction was granted upon the "grease patent," and denied upon the "tin-foil patent." This case now came on for final hearing upon both patents and was argued before the full bench.][2]

Charles M. Keller and George D. Sargeant, for plaintiff.

William J. A. Fuller, for defendants.

Before NELSON, Circuit Justice, and SHIPMAN, District Judge.

SHIPMAN, District Judge. In deciding the controversy between the parties to this suit, we do not feel called upon to discuss in detail the mass of matter which has been introduced into the case. Much of it, if not wholly immaterial, sheds but a feeble light on the main points upon which the rights of the parties must rest, and it is to these points, and the facts and principles directly bearing upon them, that we shall direct what we have to say. Before stating these points, and the conclusions to which we have come, it will be well to refer to the subject matter of the patents in question, and to the litigation which preceded this bill.

In the year 1851, Nelson Goodyear patented the peculiar substance known as the hard compound of India-rubber. He produced this remarkable material by combining sulphur with the native rubber in certain proportions, and subjecting the compound to a high degree of heat. The material produced by this combination, when operated on by the proper degree of heat, proved to be of

great value and well adapted to a great variety of uses. It is free from any disagreeable odor, impenetrable to ordinary fluids, hard, like ebony or ivory, susceptible of polish, and with an elasticity similar in kind to that of tempered steel. For many purposes of utility and ornament, its value is proved by its extensive use in the community. But the manufacture of this substance into articles for use was attended with difficulty, as it was both hard and brittle, although the combination of sulphur and native rubber, before the heat, in acting upon them, had fused the mass and evolved the new substance, was soft and plastic. It was obvious, that any contrivance that would impress on the mass, while in its soft and plastic state, the precise or approximate form ultimately desired, and preserve that form through all the stages of induration, until it was rigidly fixed in the new material evolved, would be of great value. It would, in effect, enable the artisan, while working in a soft and yielding substance, to produce any desired form or surface, in a material of a hard and comparatively indestructible character. It was to accomplish this desirable end, that the two inventions set forth in this bill were made. These inventions were made and patented by one L. Otto P. Meyer, and were known as the "Grease Patent," and the "Tin-Foil Patent." The first was issued on the 20th of December, 1853 [No. 10,339]. The second was issued April 4th, 1854 [No. 10,741], and reissued August 16th, 1859 [No. 797]. Subsequently to the original issue of these patents, they were both assigned to the plaintiff in this bill, who now owns them, and who seeks to enjoin the defendants from using what he alleges to be infringements of each.

At the April term of this court, in 1858, before the late Judge Ingersoll and a jury, an action at law, brought by the present plaintiff against the New York Gutta-Percha Comb Company, was heard and determined, which resulted in a verdict for the plaintiff on both patents, sustaining the validity of each. With this verdict the judge who presided was satisfied, and, on the 3d of July, 1858, after a full hearing, on a motion for a preliminary injunction against the same parties who were defendants in the action at law, he enjoined them from any further violation of the rights secured by each of these patents. Poppenhusen v. New York Gutta-Percha Comb Co. [Case No. 11,281]. At the October term of this court, in 1858, a motion was made for an attachment, for an alleged contempt, in violating that injunction. On the 4th of January, 1859, Judge Ingersoll filed his opinion, dismissing the motion, on grounds that will be referred to hereafter. Poppenhusen v. New York Gutta-Percha Comb Co. [Id. 11,282]. There has also been some litigation in the district of New Jersey, to which it is not necessary here to refer. The history of it appears in the proofs

---

[2] [From 2 Fish. Pat. Cas. 213.]

and exhibits. Subsequent to the filing of Judge Ingersoll's opinion, dismissing the motion for an attachment already referred to, the tin-foil patent was surrendered, and a new one issued on an amended specification. The grease patent has not been reissued. The present bill is brought on the grease patent, and on the reissued tin-foil patent. After the filing of the bill, a motion was made for a provisional injunction, which was granted on the grease patent, but, for reasons set forth in an opinion which appears among the papers in the case, was denied on the tin foil patent. Poppenhusen v. Falke [Id. 11,279].

We come now to the questions involved in the present suit, and we will consider first those which relate to the grease patent. This patent, in its present form, has been sustained by a verdict, in which the court that tried the cause appears to have concurred. Indeed, the defendants in this case do not seriously impugn its validity. The amount of inventive fertility or skill required to conceive and put in practice the ideas involved in it, was certainly not large. But the question whether it required invention or not, was one to be submitted to the jury, on the trial before them. Their verdict sustained the patent, and we see no reason to disturb the conclusion to which they came. The only question, then, left for our decision in the present case, is that of infringement. The invention claimed by Meyer, in this patent, is for "producing smooth and glossy surfaces upon the hard compound of caoutchouc and other vulcanizable gums, by means of the use of oil or other equivalent substance applied to the surface of the prepared gum and the plates of metal or moulds, substantially as therein described." For this purpose, his specification states, that animal or vegetable oils, or concrete fats, may be used. The application of these materials prevents the sticking of the gum or compound to the plates or moulds between or in which it is placed and kept during the process of vulcanization, and aids in the expulsion of air from between the plates and the gum, when they are pressed or rolled into contact. It is obvious, and experience demonstrates, that this application gives a smooth and glossy surface to the compound, which remains when the plates are removed. The defendants insist that they do not use oil or concrete fat, or the equivalent of either. They admit that they use spirits of turpentine, with a small quantity of rubber dissolved in it. We are inclined to the opinion, that this solution, as they term it, is an equivalent for the materials covered by the Meyer patent. For all the purposes for which it is applied to this process, it accomplishes the same results in the same way, and by substantially the same properties of matter, in the material used. A small quantity of rubber might be dissolved and mixed with the liquid product of the castor oil bean or the olive, and accomplish the same result, but would be clearly within the Meyer patent, as we think. Whether the addition of the small quantity of rubber used by the defendants would be an improvement to the oil, we need not stop now to inquire. The turpentine may be an inferior equivalent, and may be improved by the addition of the dissolved rubber, but we think, upon the evidence, that it is shown to be an equivalent, and that its use is an infringement of the Meyer patent. The injunction must, therefore, be made perpetual.

But the most important questions in this controversy relate to the tin-foil patent. This patent, under the original issue, was, as already remarked, the subject of litigation before Judge Ingersoll and a jury. The validity of the patent was sustained, and subsequently the judge who presided at the trial granted, after full hearing, an injunction on this as well as on the grease patent. We discover nothing, in the evidence before us, that leads us to doubt the correctness of that result. The trial before the jury seems to have been full and thorough, and, the judge who presided having approved the verdict, we should hesitate long before we disturb it, unless clear proof was presented that some error had intervened. But we are satisfied, from an examination of the evidence presented in support of this bill, and by the defendants in reply, that Meyer was the first to apply tin foil and its equivalents to the preservation of the forms and shapes of the hard rubber compound during the process of vulcanization. We are clear, also, that the invention, as described in the original patent, applied as well to flat sheets and plain surfaces as to those which were moulded or wrought into irregular and configurated forms. On this point, it is not necessary to enlarge here, but we affirm the views stated in the opinion denying the motion for a preliminary injunction.

After the original tin-foil patent had been sustained by a verdict, and by a provisional injunction immediately following that verdict, a motion was made before Judge Ingersoll for an attachment for an alleged violation of the injunction. This motion was denied, on the ground that it was not proved that the metal plates used by the defendants in that motion were equivalents of tin foil, and within the scope of the injunction. We do not doubt the correctness of Judge Ingersoll's decision of that motion. The litigation, up to that point, had related to the fact of the invention rather than to its scope. The particular subject-matter upon which the attention of the triers appears to have been expended, was the validity of the patent, so far as it secured the exclusive right to use tin foil in the manufacture of embossed or configurated forms. Neither on the trial before the jury, nor on the motion for an injunction, does there appear to have been any effort to fix the limits of the invention, either

by construction or by proof, so far as these limits depended upon the question as to what materials were or were not equivalents of tin foil. In his opinion, Judge Ingersoll remarked: "Since the injunction issued, the defendants have not used or applied tin foil in the process of vulcanization, as above described. They have, however, used sheets of brass and sheets of tin, something like roofing-tin, for that purpose; and it is claimed that the sheets so used are an equivalent for tin foil, and therefore equally to be prohibited to be used by the defendants. It is not claimed that all plates or sheets of tin or other metals are an equivalent for tin foil. The opinion of the court on granting the injunction is against any such claim; for the court say, that it had been common, before the patent to Meyer, to place the material between plates of tin or other metal, so that the material would be in close contact with the plates, to preserve its form. It is admitted, that there is a substantial difference between such plates or sheets of metal and tin foil. But it is claimed, that the sheets of brass and tin used by the defendants are an equivalent for tin foil; that they are substantially like it; that they perform substantially the same office in substantially the same way. They are not rigid. They are somewhat flexible, but not sufficiently flexible to make them an equivalent for tin foil. They cannot be moulded into any desired shape and form, as tin foil can. They are like rigid, plain plates or sheets fitted only for plain surfaces. They cannot be said to be tin foil, or its equivalent; and the defendants were restrained only against the use of tin foil or its equivalent. The plaintiff claims that the patent is for the use and application, not only of tin foil, but also of all sheets of metal that are not rigid. This construction was not put upon the patent, either on the trial at law, or on the application for the injunction. Such construction was not claimed on either of those occasions. The defendants were not restrained from the use and application of tin or other sheets of metal that were not rigid, but only from the use and application of tin foil or its equivalent. Tin foil does not include all sheets of metal that are not rigid. If it is to be claimed that the patent is for the use and application of all sheets of metal that are not rigid, the defendants should, if the patent will bear that construction, have an opportunity to show that the use and application of such sheets was not new when the patent was obtained. As yet, no such construction has been put on the patent." Since the rendition of that opinion, the patent has been reissued; and, according to our construction, it embraces the use and application of all metal plates that are sufficiently flexible to be used in substantially the same way, with substantially the same results, that tin foil could be used, when applied not only to irregular but to plain flat sheets of the compound. It covers, in our judgment, all plates that are sufficiently flexible to admit of their being rolled upon the compound, substantially in the manner described in the reissued Meyer patent, and so firmly united as to expel the air, and secure the adhesion of the plates and compound, through the process of vulcanization, without the necessity of other pressure or force. We are of the opinion that the proofs in the present case fully maintain the claim that the original invention of Meyer was co-extensive with this construction of the reissued patent.

The defendants allege that they use other pressure or force; and that they confine the mass, or series of plates of metal and sheets of compound, between rigid outside plates of iron, held together by means of clamps or screw bolts, and thus compress the pile. But we have searched the evidence in vain, for proof of the necessity or utility of these outside iron plates. We think that, as the defendants use them, these iron plates hold between them the soul and body of Meyer's invention. Upon the proofs, we judge them to be neither material nor useful, and cannot see how they relieve the defendants from the charge of infringement.

It was suggested, on the argument, that it would appear, by a comparison of the original and reissued patents, in the light of Judge Ingersoll's opinions, that the object of the reissue was to extend the monopoly secured by the patent beyond the limits assigned to it by those opinions. This may be, and, doubtless, is, true. It is quite likely, too, that the necessity, or at least desirableness, of a reissue, was first suggested by the remarks of Judge Ingersoll, in defining the original patent. But the inference that we are asked to draw from this fact, that the reissue was, therefore, fraudulent and void, is wholly inadmissible. It not unfrequently happens, that a judicial interpretation of the specification or claim of a patent, or of both, discloses to the inventor and patentee, for the first time, the defects in the instrument, and shows him that he has unwittingly restricted his rights within narrower limits than his discovery, or has so inartificially described his invention, that he has failed to secure any substantial advantage by it. Such a disclosure furnishes a proper occasion for a surrender and reissue, when the error was inadvertent, and is clearly within the beneficent design of the statute. The judicial mind gives a legal construction to the language of the instrument, and this construction may reveal the fact that the terms used fail to cover the invention. To hold that the inventor should not be allowed to restate his claims by the use of new terms, would defeat the object of the law, and abridge or strangle the inventor's rights, by reason of the imperfect language in which he had attempted to clothe his discovery.

It is hardly necessary to add, that we dis-

cover no evidence of fraud, tending to invalidate the reissued tin-foil patent. A perpetual injunction must, therefore, issue.

[For other cases involving these patents. see note to Poppenhusen v. New York Gutta-Percha Comb Co., Case No. 11,283.]