## MESTA MACH. CO. v. FEDERAL MACHINE & WELDER CO.
### No. 7108.

Circuit Court of Appeals, Third Circuit.
Feb. 23, 1940.

Richey & Watts, of Cleveland, Ohio, and Clarke & Doolittle, of Pittsburgh, Pa. (F. O. Richey and H. F. McNenny, both of Cleveland Ohio, of counsel), for plaintiff-appellee.

480

Stebbins, Blenko & Parmlee, of Pittsburgh, Pa. (Walter J. Blenko and J. Wallace Hopkins, both of Pittsburgh, Pa., of counsel), for defendant-appellant.

Before MARIS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

Lord Halsbury, a very famous English equity judge and the compiler of their Corpus Juris,[1] summarized the difficulties of the patent judge in this fashion. Speaking in the House of Lords, he said: "My lords, this is an appeal of a class which almost always raises a difference of opinion amongst those called upon to decide them— the reason is perhaps not difficult to discern. Mixed up with the question of law on which the appellate tribunal is called upon to adjudge are questions of science and engineering, mechanical and other branches of human knowledge and while the principles of law regulating the lawfulness of monopoly are simple enough, the application of these principles is sometimes extremely difficult." British Vacuum Cleaner Co. v. London & Southwestern Railroad Co., 1912, 29 R.P.C. 393. Such a difference of opinion exists between the members of this court and the learned district judge who sat below in the case at bar, Federal Machine & Welder Co. v. Mesta Machine Co., D.C., 27 F.Supp. 747.

We need go no further than the United States Reports for a description of the art at issue. In the case of Thomson Co. v. Ford Motor Co., 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098, we find the following in the court's opinion:

"* * * We take the following extracts from the well considered opinion of the circuit court of Appeals:

" 'The art of electric resistance welding was old and far advanced in 1903, when the Harmatta patent was applied for. Prof. Elihu Thomson * * * was a pioneer in that art. In 1886 he obtained process and apparatus patents *.* * * for so-called butt welding, which involved the uniting of the abutting ends of metal wires, bars, etc., by applying heat at the joint and the adjacent surfaces by means of electrodes, and pressing the two pieces together when heated to welding temperature. There was here true resistance welding, with pressure of the parts involved, although the elec-

trode did not exert the welding pressure. * * *'" Thomson Co. v. Ford Motor Co., 265 U.S. 445, 448, 449, 44 S.Ct. 533, 535, 68 L.Ed. 1098.

An inevitable but undesirable aftermath of this process is dealt with in an earlier opinion in this circuit modifying the writer's judgment, Steel & Tubes v. General Tube Co., 3 Cir., 61 F.2d 475. There it is said: "* * * That is, the edges are pushed together to secure the weld beyond the damaged edges through which the series of shots of the heavy electric current must pass. Consequently, such a weld must result in metal that is pushed aside on the upset forming a considerable 'burr' at the seam both on the outside and inside of the tube. There is no need to repeat the disadvantage of such a product." Steel & Tubes v. General Tube Co., 3 Cir., 61 F.2d 475, 476. And the particular process found valid by both lower and upper courts was approved on the theory of a diminution in the size of the burr or flash.

Professor Thomson, the "pioneer" referred to by the Supreme Court, at the time of his original patents stated that "the burr could be readily filed or ground off". Four years later we find his company obtaining patents for mechanical means for such filing or grinding.[2] So it is conceded that the shear blades of the Anderson and Tregoning patent and other similar mechanical strippers are not new. But it is said that the presence of a welding machine and a stripping machine in the same (plaintiff's) patent endow it with genius rather than ingenuity. The contrasting facets of the "simple" principle are, it seems to us, well brought out in some brief quotations from the English patent law reports. On the one hand, the judges describe the failure to achieve subject matter (English equivalent for patentability):

"Now here it is necessary to define what one means by a combination. If the combination is of the character of the case to which I referred in the course of the argument, that is to say, that it simply consists in placing two well-known machines together in a manner which involves no invention, it is familiar patent law that for a combination in that sense you can take out no patent." Lord Chancellor, In the matter of Gaulard & Gibbs, 1890, 7 R.P.C. 367, 381.

---

[1] Halsbury's Laws of England.
[2] Anderson and Tregoning Patent, No.

423,979, March 25, 1890 (burr-remover), Record p. 321.

"Now, that does not seem to me to be invention, it seems to me to be nothing more than merely a *neat arrangement* of old and well-known elements necessitating the adoption of an old and well-known mode of operating." Judge, Court of Appeals, Buck v. Harrap & Co., 1896, 13 R.P.C. 615, 621 (italics ours.)

"In my opinion, Mr. W. was right when he said that Mr. B. did no more than place in *juxtaposition* quite familiar parts of mechanism and bid us pump harder." Lord Lorburn, House of Lords, British Vacuum Cleaner Co. v. London & Southwestern Railroad Co., 1912, 29 R.P.C. 393, 398 (italics ours).

"To add to one well-known machine another well-known machine, by a perfectly simple and ordinary means is not subject matter of a patent." Cozens Hardy, Master of the Rolls, Court of Appeals, Layland v. Boldy & Sons, 1913, 30 R.P.C. 547.

And on the other hand, the touchstone of success is phrased:

"A combination must be something more than a mere juxtaposition; it must be an *adaptation.*" Lord Rutherford, Scotch Court of Sessions, Von Berkel v. Simpson, 1907, 24 R.P.C. 117, 132 (italics ours).

"As to the second part, reliance is placed upon Williams v. Nye, 7 R.P.C. 37, and Layland v. Boldy & Sons, 30 R.P.C. 547, in contending that the several integers function as such, and not as part of an *interacting* combination within the meaning of the patent law." Mr. Justice Asterbury, Court of Chancery, Keith & Blackman Co. v. Tilley High Pressure Gas Syndicate, 1913, 30 R.P.C. 537 (italics ours).

We have quoted from these English patent cases rather than from our own decisions because we feel that the bar and the courts would profit by a more frequent reference to and citation of them. In this division of the law, as in others, the English judges are adepts in the art of opinion writing. There is, however, a multitude of similar opinions in our own federal reports. Counsel cite many of them and they are all collected in the very full notes in 35 U.S.C.A. § 31, subsections 64, Aggregation; 65, Combination; 66, Co-operation of elements; 67, New results.

We think that the patentee[3] has himself obviated for us the extreme difficulty referred to in our opening quotation from the Lord Chancellor. Mr. McBerty was called as a witness and his pertinent testimony appears in the record at pp. 116, 117. We set it out in extenso because we know of no more candid, not to say engaging, description of an aggregation, or, as the English say, juxtaposition.

"'Q. 75. By that do you mean that the operations are carried out in a certain sequence? A. Certain sequence. You can clamp and weld, and release and clamp, and strip.

"'Q. 76. Just like a man would plane a board after he had sawed a board? A. After he gets familiar with it, yes.

"'Q. 77. Is the correlation, with respect to which they are operated, limited to sequence? A. Let's see just how that should be answered.

"'Q. 78. Suppose you just state how they are operated. A. The first operation is placing the ends of the pieces to be welded in the clamping jaws of the welding machine, the weld is then made, and, normally, the operator would clamp his gripping mechanism at that time. Then upon release of the clamps from the welding jaws, if he has not already clamped his flash trimmer, he clamps that, actuates his control for moving the gripping mechanism back so as to draw the sheets through the stripper. There is some latitude allowed to the operator in the method of handling the machine.

"'Q. 79. Will you state whether or not those operations are correlated with each other with respect to time, for example? A. No; they are not necessarily to be specified just that way because you can make your weld one day and strip your flash the next day, if you felt so disposed, if it was not a matter of the travel of the sheet which you are endeavoring to maintain.'" McBerty, Record pp. 116, 117.

It would be folly to enter the realm of prophecy particularly as to that most unpredictable abstraction, the course of genius. Welding of butts and stripping of flash have, however, a quality of mechanical separateness that might well forever defy "a combination" for dealing with both of them.

The decree of the District Court is reversed.

[3] McBerty Patent, No. 1,832,719, November 17, 1931 (combined electric welder and flash stripper), Record p. 237.