## MORRISON v. COE, Commissioner of Patents.

### No. 7721.

United States Court of Appeals for the District of Columbia.

Decided Feb. 9, 1942.

Mr. Donald M. Carter, of Chicago, Ill., with whom Mr. Spencer B. Michael, of Washington, D. C., was on the brief, for appellant.

Mr. E. L. Reynolds, of Washington, D. C., with whom Mr. W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal challenges a judgment for the Commissioner of Patents in a suit brought under Rev.Stat. § 4915 (1878), 35 U.S.C.A. § 63 (1934), to authorize and compel him to issue a patent to plaintiff for a room-cooling system. The Patent Office and the trial court held it not inventive.

The system is intended to cool only the lower portion of the room, that is, the part actually occupied by human bodies. As plaintiff regards them, the essential features consist in having this part of the room airtight, with no opening except from above. Windows, doors, and other wall openings are placed in the upper portion. The cooling device is placed immediately below the windows, so that warm air coming through them is cooled and partially dehydrated by contact with it. The cooled air descends by gravity to the lower part of the room and pushes upward the warm,

---

stale air with impurities such as smoke. The warm air then escapes through the open windows. There is no dispute that the application and claims on appeal require the features of a closed or nearly airtight lower part of the room forming in effect a tank, windows and doors in the upper or uncooled part, and cooling means placed below the windows. It is disputed whether the application and the claims require the windows to be open, the cooling means to be *immediately* below the windows, and the absence of a fan or other artificial means for circulating, as distinguished from cooling, the air. Plaintiff says his system will not work with a fan, does not require it, nor do the application and claims, and that his discarding of the fan or other mechanical means of circulation is one of the evidences of genius in his invention.

The Commissioner says the system as plaintiff conceives it is not inventive, and if it were the application and the claims do not describe it, in the respects noted, but are so broad as to cover practically all aircooling systems, whether or not previously known.

Plaintiff says his system is not merely a departure, but in fact is a reversal of the prior art, and revolutionary. This he claims in two principal respects, namely, the omission of mechanical means of circulation and operation of the system by gravity, apparently both vertically and laterally; second, in substituting open for closed circulation, that is, in having the windows open rather than closed. It is said that control of the volume of air was thought previously to be impossible with open windows or other apertures, and the problem created by them was regarded as being to avoid having to cool all of the out-of-doors. Plaintiff claims he succeeded in doing this and thus accomplished what was thought to be impossible. He also claims that fans or other mechanical means of circulation were regarded as essential in the prior art, and his system was equally revolutionary in dispensing with them. Thus, plaintiff relies principally for invention upon those features as to which there is dispute whether the application and the claims specify them.

Radical results as well as ideas are claimed. Since only the bottom of the room need be and is cooled, there are in the room two distinct air zones, divided by an invisible ceiling or plane of division located at the level of the window sills and

the cooling device. The cool air in the lower part not only expels the warm, stale air upward, but prevents it from coming down, thus creating the invisible ceiling. It also acts as an insulator at the sides of the lower part of the room, dispensing with the need and cost of insulation by construction. This feature of cooling only the bottom is said to make for great economy over all other systems and, in conjunction with the simplicity and adaptability of the system to various sizes of rooms, to make air-cooling possible for poor people.

The use of gravity, rather than fans, for circulation, it is said, keeps entirely separate, or almost so, the fresh, cool air and the impure, stale, warm air. Fans, it is claimed, mix the two, and the slower method of gravity avoids this, thus giving not only cool, but fresh and clean air. Thus, the system improves on the prior art by cooling the body "by radiation in a quiet body of cool air instead of cooling by induction by blowing a current of air over the body." Other claimed advantages need not be mentioned.

The Board of Appeals rejected the alleged invention as being obvious. It said: "We believe that any air-conditioning engineer should understand the advantage of locating the cooler at this point [below the window] in order to induce the fresh air to flow down to the occupied portion of the room and displace the air there rather than to allow it to mingle with the warmer air in the upper portion and then escape from the room without benefiting the occupants." The District Court held that there was no invention over the prior art, and cited Grimm, No. 763,279, as disclosing a basement room having door and window openings in the upper portion, and Kramer, No. 1,706,852, as disclosing a portable room cooling apparatus, which might be placed in any part of the room and has a fan. The court concluded that no invention was required to place the Kramer device in the Grimm room, that the claims in suit are not patentable over the prior art, and dismissed the bill as to all of them.

We cannot say that the Patent Office and the District Court were clearly wrong. The judgment therefore must be affirmed. Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449. That would be true if the application and the claims clearly covered the invention in the manner plaintiff says they do. So considered, plaintiff practically seeks to patent the law of gravity and the laws of heat as applied

to the movement of air, and does so in a way which, we agree with the Board of Appeals, would be obvious to any air-conditioning engineer, if not perhaps also to any layman. Plaintiff lays great stress upon the fact that the prior art knew only closed systems of circulation and required mechanical means for this. In other words, his invention consisted in opening the windows and dispensing with the fan, as much as in providing the "tank" arrangement of the room. Thus he claims he did not follow or extend the previous art. Rather he went directly contrary to it, and thereby achieved his allegedly startling results.

▮ Assuming all this to be true, it does not follow that the method was not obvious. The fact that cold air descends and warm air rises, so that the one displaces the other when mixed, is a fact of common physical knowledge. So is the fact that warm air will cool when brought into contact with a cooling surface. Likewise, fresh air enters through open windows and stale air escapes through them. That basement rooms are cooler than other portions of the house is common knowledge. That is so not only becausue cold air sinks, displacing and pushing warm air upward, but also because basements commonly have the "tank" effect, with windows and other openings at the top. But keeping the windows closed creates a stagnant condition of the air. The obvious way to relieve this is by opening them. But to do so lets in warm air when the outside temperature is the higher, or would do so but for the fact, on which plaintiff greatly relies, that cold air descends and because of this propperty prevents warm air from above mingling with cold air below. But it would seem obvious that if the warm air at the window were brought in contact with a cooling surface there which would reduce its temperature below that of the air beneath the window, it would descend and displace that air, expelling it through the window. Whether obvious or not, we cannot say that so much imagination was required to put these commonly known facts together to make a cooling system that the mental operation was a stroke of genius as a matter of law, if there is any such thing in the world of inventiveness. Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 62 S.Ct. 37, 86 L.Ed. ——; Thomson Spot Welder Co. v. Ford Motor Co., 1924, 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098; Stoody Co. v. Mills Alloys, 9 Cir., 1933, 67

F.2d 807, certiorari denied 1934, 292 U.S. 637, 54 S.Ct. 718, 78 L.Ed. 1489. Nor is this clearer as a matter of fact.

We agree with the trial court, therefore, that Grimm discloses plaintiff's room arrangement and Kramer teaches, if it does not actually disclose, the location and use of his cooling device. That Kramer's device also used a fan for circulation does not negative this teaching. Whether or not a fan were used would affect only the rate, not the fact or the function, of circulation. We therefore also agree that patentable ingenuity was not required to put Grimm and Kramer together to achieve plaintiff's conception and results. Taken so, they taught the solution as well as the problem.

▮ Plaintiff's ingenuity, if any, appears to be in the structure or arrangement of the buildings. All windows and doors must be in the upper part of the building, six feet at least above the floor, unless it is intended the occupants shall be only partially cooled. The figures show two types of construction. One has the floor level on or above the ground surface. The other has it below the surface, like a basement. If the former is used two sets of stairways, ladders or elevators must be built for entrance, one outside and up to the doorsill, the other inside and down from it. If the second type of construction is used, only the inside stairway is needed. But this advantage is offset by the necessity for excavating all of the room below the level of the doorsill. The quantity of excavation might, however, be reduced by placing the structure on the side of a hill. No doubt these features, the double stairs or other means of elevation and descent in the one case, and the single stairs plus the excavation in the other, account for the failure of architects to adopt the invention and thus for its failure to achieve commercial success, admitted at the argument. These difficulties obviously would be magnified somewhat in the case of a multiple-room structure, especially one having several stories. Want of commercial success does not of itself ordinarily show lack of invention, but the causes for it may throw light on that question in particular cases, as we are inclined to think they do in this one.

In view of our ruling on the question of invention, it is not necessary to discuss whether the application and the claims disclose the claimed invention as plaintiff says if consists. A careful reading of

740

the application shows the Patent Office is correct in the view that it does not require the windows to be opened. It states that "one or more windows may be formed in the side walls." But it also states: "It will be understood therefore that the coils cause circulation of the air within the room, *whether the windows are open or not,* and the *recirculation* within the room which the coils cause *goes on whether the windows are open or not* and *whether or not some* air *is coming in* through the windows *and* some air is *spilling out* through the windows." (Italics supplied.) Though some of the claims specify "an open window * * * system," this language of the application clearly negatives the necessity for this feature.

. Nor did the application require the exclusion of fans or other mechanical circulating means, or indicate their undesirability. Some of the claims imply their absence, but others seem expressly to contemplate their presence or are so broadly drawn as to include them. Thus Claim 16 specifies "means for inserting and holding cool air in the lower part of said room." This clearly, without more, would not exclude a fan.

It is questioned, too, whether the claims require location of the cooling device *immediately* below the windows. But in any event it is clear the application does not require the windows to be opened or the exclusion of the fan or other mechanical means for circulation as distinct from cooling. The claims also include one or the other of these features, but insofar as they may include them depart from the application. Without these features there was even more clearly no invention, and the invention plaintiff now says he made is not defined.

The judgment is affirmed.