**ALLEN FILTER CO. v. STAR METAL MFG. CO. et al.**

**No. 4174.**

Circuit Court of Appeals, Third Circuit.

April 2, 1930.

Rehearing Denied May 20, 1930.

Percy H. Moore, of Washington, D. C. (Charles I. Thompson, of Philadelphia, Pa., of counsel), for appellant.

E. Hayward Fairbanks, of Philadelphia, Pa., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

In the court below, both claims of patent No. 1,470,094 to Mull, assignor to the Allen Filter Company, the plaintiff, were held invalid and the bill of complaint alleging infringement by the defendants, Morris Stein and Abe S. Levin, copartners trading as the Star Metal Manufacturing Company, was dismissed. The plaintiff appealed.

The patent is for a water cooler of the coil type, in which the water from the source of supply flows to its outlet through a coil in an ice container or box. To prevent interference with the placing of the ice cake in the cooler and to obtain the maximum refrigeration through constant contact of ice and coil, it is desirable that the coil should be placed in the bottom of the cooler. Yet, in that location, the pipes, made generally of lead or block tin, have been frequently crushed and damaged by the slipping or falling of the cake of ice while being put in the cooler. The principal object of Mull's invention was "to provide a cooler coil of such resiliency for supporting the ice that the coil is not liable to become damaged when a fresh cake of ice is placed in the water cooler, and in contact with the coil." His claim 1 is for "a water cooler comprising an ice box having a water inlet and a water outlet, a resilient refrigerating coil connected at opposite ends to said inlet and outlet respectively, said coil having bends or convolutions graduated in height, the bottom most of said coils resting on the bottom of said ice box." Claim 2 differs from claim 1 only in that it calls for a resilient coil having bends or convolutions graduated in circumference as well as height.

The water cooler art is an old one, and others had long sought a means to prevent the breaking and crushing of the pipe. In patent No. 238,679, granted in 1881 to Greenebaum, vertically disposed projections mounted on the bottom of the cooler were said to "protect the pipe from injury by the ice." Patent No. 949,216, granted to Canida in 1910, states that in practice the coil "is made of block tin, which is comparatively soft." His means for preventing injury consisted of a hollow casing, grooved to conform to and receive the convolutions or bends of the refrigerating coil. Fliegenschmidt & Prinzler said in their patent No. 1,190,746, granted in 1916, "Damage is done to the coil which is generally of lead, by the mashing together of the walls, particularly of the top convolution, due to haste and carelessness in depositing and packing the ice in the box." They provided a guard or shield for the upper end of the coil to receive the impact in icing the box.

The defendants find patent No. 125,268, granted to Campbell in 1872, as adequate for their purposes as any, and focus their discussion of anticipation and noninvention upon that. Campbell disclosed a pipe of superimposed coils, having a plurality of convolutions, gradually increasing in width, with the lowermost coil resting on the bottom of the box. He states that it is coiled in this manner "in order that the largest amount of surface may be exposed in the least possible amount of space," and that the pipe "may be made of any suitable kind of metal." Since Campbell's coils were of metal and consequently had some resiliency and bends or convolutions graduated in height and circumference, the defendants conclude that Mull departed from Campbell only to the extent of making use of a more resilient metal, that Mull differs from Campbell only in degree, and that Campbell's invention constitutes a complete anticipation of Mull's claims.

The Mull patent was applied for in September, 1922, more than fifty years after the granting of the patent to Campbell. Campbell neither disclosed nor suggested that it would be beneficial or advisable to make the coil of resilient metal. He did not need to. His patent did not deal with the problem of crushed coils. He did not have that problem. When ice was to be placed in his cooler, the whole of the chest above the coils was removed and the ice was slipped, not dropped, upon the coil. He was merely placing the largest amount of exposed coil surface "in the least possible amount of space." The problem whose solution Mull, and many others in the half century that intervened between him and Campbell, undertook, was the protection of the coil from injury by falling cakes of ice. Mull's solution of that problem was to make use of the property of resiliency in metals by making his coils of resilient metal and giving to the coils a shape, design, or configuration that would enable the force of resiliency, first utilized in this art by Mull, effectively to function.

It is, of course, too well settled to be now open to question that the mere substitution of one material for another in an old article is not invention, notwithstanding the substituted material may be better for the purpose. Walker on Patents (6th Ed.) § 65.

As we understand the law, it is equally well settled, however, that there may be invention in selecting a particular material for a particular purpose, although other materials of the same class have been used before for the same purpose, and even though a patent has been previously granted for the use of the whole class. Potts v. Creager, 155 U. S. 597, 608, 609, 15 S. Ct. 194, 39 L. Ed. 275; Andrew's Patent, 25 R. P. C. 477. But courts which scrutinize such patents somewhat narrowly require, before invention may be found, that it must at least appear, not only that there is a special advantage attached to the use of the particular substance claimed, but also that its use is not the result of judgment and skill in the selection of materials, nor a probable consequence of the natural development of the art. Yet, where the substituted material performs a new function, and its adaptability for the purpose was not obvious, invention may be present. Walker on Patents (6th Ed.) § 66. Notwithstanding the suggestion of Campbell that the pipe might be made of "any suitable kind of metal," the art continued for fifty years to make use of metals that from a practical standpoint are wholly inert, metals that are entirely destitute of the power of active resistance to blows and that are powerless to produce the desired effect. Instead of turning to resilient metals, the art went in another direction, and, as we have shown, made use of protecting devices such as false bottoms above the coils, shields for the coils and vertical projections upon the bottom of the box to protect the coil made of inert metal. Mull declined to take the well-worn pathway upon which the art had been traveling for half a century and blazed a new trail in the diametrically opposite direction by making the pipe of a metal possessing through the property of resiliency, properly applied, the power of active resistance to the impacts of the falling ice by making a coil having a new added function, a coil that, when struck, would fight back. In short, he was the first to see or discover the capability of this force in this art. The claims in issue call for this force but, as the inventor realized that a force alone is not an operative means, the claims call as well for a specified mode of application through which the force may act. The essence of the claims lie, however, not in their selected mode of application, but in the discovery of a new capability of a known force and its union with some mode of application through which it can act or be utilized effectively. Robinson on Patents, §§ 97, 101, and 102. It is suggested, however, that all metals have resiliency in some degree

and that Mull's device differs from that of Campbell at most only in degree.

But the resiliency of the metals employed in the prior art is so slight as to be negligible and functionless. Mull employed a coil "of such resiliency * * * that the coil is not liable to become damaged when a fresh cake of ice is placed in the water cooler, and in contact with the coil." The difference is not one of degree but in function and result. It is precisely the difference between failure and success. Nor is patentability defeated because the boundary line between coils coming within the patent and those falling outside it is not marked with equatorial precision. It would have been difficult, if not impossible, to mark it more definitely. It is as fixed and certain as was the boundary in Van Heusen Products v. Earl & Wilson (D. C.) 300 F. 922. It is sufficiently obvious to enable those skilled in the art to locate it. The law requires nothing more. Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. We think the claims are valid.

Defendants assert that their coil is constructed under their patent No. 1,660,141, applied for March 31, 1927, and granted February 21, 1928. The specification refers to the earlier practice of employing a single cooler coil, the bends of which were in a single horizontal plane resting on the bottom of the ice box. It states that such coils were liable to be damaged by the impact of a large cake of ice dropped thereon. It likewise refers by description to plaintiff's coil, and says that, because of the height of the bends, it restricts the ice space. It proposes to overcome these disadvantages "by providing novel twin coils compactly arranged, whereby a maximum number of bends or convolutions is employed, thereby affording a maximum contact with the cooling medium." A coupling member connects "the juxtaposed inner ends of the lower and upper coils to each other, said upper and lower coils being compactly arranged in only two horizontal planes which are at all times submerged in the ice water. * * *" The specification further states that, by the employment of the twin coils and the coupling, "we are enabled to position said upper and lower coils very closely together. * * *" The metal to be employed in making the coil is not specified. It is unnecessary to determine whether a cooler made in strict conformity with the specification and claims of defendants' patent would or would not be an infringement of plaintiff's claims, for defendants' coils are not made in conformity with their patent. The defendant

Levin testified: "When we first started to make coolers we made tin coils, and we found they were breaking. We made lead coils, and they were getting crushed. We made galvanized coils and they were getting rusty. We went through the same process that Mr. Mull went through, absolutely." That is, in practice, defendants' coils are now of brass, tinned inside and out. Brass is a highly resilient metal. Levin further testified that their coils were made on a hand bending machine and that "you could never get a straight pipe." Again he said: "As to whether our thought is to get away from resiliency by having one layer rest on the other; will say: * * * We don't try exactly to run away from that where it is impossible. After all, in all fairness, it is brass condenser tube, and there is a certain amount of it there that you cannot take that out, so we don't exactly try to run away from that. * * * There is a certain amount of spring there and we cannot run away from it. On a hand bending machine it would be impossible to make it without having resiliency."

As each of defendants' twin coils is made of highly resilient metal and on a hand bending machine from which it is impossible to get a straight pipe, it is obvious that each coil is in effect and function a resilient coil graduated in height, and, as each coil has several convolutions each circumscribing a preceding winding of shorter radius, it is likewise obvious that each coil is one having bends or convolutions of graduating circumference as well as height, and that consequently defendants' coil is well within each of the claims in suit. Nor is infringement avoided by the employment of connected twin coils, placed one above the other.

The decree below must be reversed.