**FEDERAL MACHINE & WELDER CO. v. MESTA MACHINE CO.**

No. 3406.

District Court, W. D. Pennsylvania. May 1, 1939.

Richey & Watts, of Cleveland, Ohio, and Clarke & Doolittle, of Pittsburgh, Pa., for plaintiff.

Stebbins, Blenko & Parmelee, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This is a civil action, the purpose of which is to restrain the defendant from alleged infringement of claims 1, 4, 12 and 13 of the McBerty patent No. 1,832,719, and for an accounting of profits and damages. The issues are the validity of said claims, whether the defendant has infringed the same and whether plaintiff is entitled to an accounting for profits and damages.

Defendant contends that said claims are invalid, and while the defenses vary slightly as to the different claims, the defense of invalidity, generally, is that said claims cover an exhausted combination; that they define a mere aggregation; that they are anticipated by prior use of the Fretz-Moon Tube Company, by the prior use of the Cleveland Welding & Manufacturing Company, and by others; also, that they are invalid in view of the prior patents.

Plaintiff contends that the claims involved are valid; that the machines made by it, under the McBerty patent, produce a new and useful result that had been sought by those learned in the art without success, and that said machines are a commercial success.

The McBerty patent, as stated therein, "relates to an improved combined electric welder and flash stripper which has been conceived for the purpose of butt welding together the ends of a continuously moving strip of material and thereafter removing from said strip the rough edges of flash which the welding operation leaves on the upper and under sides of the material at the point of the weld."

The patent states further, "One method of manufacturing hollow tubing or piping is to form the same from a continuous strip of constantly moving material and after forming or making the pipe to cut the same into the desired lengths."

The patent states further, "In the completed pipe the inner and outer surfaces must be smooth and accordingly it becomes necessary to remove from the strip the flash or burr which is the result of the welding operation which joins the ends of the strips together, and to accomplish this result the present machine includes in addition to the electric welder a flash stripper and the construction is such that the welding and stripping operation can be made while the strip is being continuously fed to either the pipe making machine or to a heating furnace or a pickling bath or some like step in the manufacture of the strip into the pipe tubing or other article."

It is stated in the patent that the primary object of the patent is "the provision of a new and improved combined electric welder and stripper of a construction which makes its use possible with either idle or moving work or material." Another object, as stated therein, is "the provision of a stripper of a novel construction to be used in combination with a welding machine." Another object being "the provision of a novel form of shear as a part of the stripper." Another object specified is "the provision of a movable clamp of an improved and novel construction for use in conjunction with the shears of the stripper."

The McBerty patent contains 13 claims of invention. Claim 1 reads: "In combination with an electric welding machine for butt welding the ends of material together, a flash stripper through which said material passes after the welding operation and comprising, a shear in engagement with the under side of said material, a shear adapted to engage the upper side of said material and clamp the material under pressure against said lower shear, and means forming part of said stripper adapted to engage said material and pull the same through said shears for removing the flash from both sides of said material." Claim 4 reads: "A combined welding and flash shearing machine for operation upon continuously moving material, comprising means to butt weld the material together, means to remove from said material the flash caused by said welding operation, and means to permit the continued movement of the material behind said machine during the welding and flash shearing operations." Claims 12 and 13 provide for "a pair of V-shaped shear blades" and how said blades shall be set, etc.

In determining the issue of validity of the four claims involved, it is necessary to keep in mind, among others, certain rules of law:

First, the rule stated by Mr. Chief Justice Hughes in Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 676, 81 L.Ed. 983, that: "The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it. Walker on Patents, § 116. Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that 'every reasonable doubt should be resolved against him.' Id. Cantrell v. Wallick [117 U.S. 689, 6 S.Ct. 970, 29 L.Ed. 1017], supra; Coffin v. Ogden, 18 Wall. 120, 124, 21 L.Ed. 821; Barbed Wire Patent, 143 U.S. 275, 284, 285, 12 S.Ct. 443 [450], 36 L.Ed. 154; Adamson v. Gilliland, 242 U.S. 350, 353, 37 S.Ct. 169, 61 L.Ed. 356."

Second, the rule laid down in Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 487, 55 S.Ct. 455, 459, 79 L.Ed. 1005, that: "Under the statute, it is the claims of the patent which define the invention. * * * And each claim must stand or fall, as itself sufficiently defining invention, independently of the others."

Third, the rule stated in Expanded Metal Company v. Bradford, 214 U.S. 366, 381, 29 S.Ct. 652, 656, 53 L.Ed. 1034, that: "It is perfectly well settled that a new combination of elements, old in themselves, but which produce a new and useful result, entitles the inventor to the protection of a patent. Webster Loom Company v. Higgins, 105 U.S. 580–591, 26 L.Ed. 1177–1181."

See, also, Drumhead Co. of America et al. v. Hammond, D.C.W.D.Pa., 18 F.Supp. 734. Hammond v. Drumhead Co., 3 Cir., 89 F.2d 241. In Robinson on Patents, Sec. 237, it is stated: "Any diversity (of shape, size, proportions or arrangements) which introduces a new function or a new meth-

od of performing the old function, is a new and independent invention."

■ Fourth, the rule laid down in Expanded Metal Company v. Bradford, supra, that: "It may be safely said that if those skilled in the mechanical arts are working in a given field, and have failed, after repeated efforts, to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor."

See Temko Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 324, 48 S.Ct. 170, 72 L.Ed. 298. This rule has been followed by the Circuit Court of Appeals of this circuit and in other circuits. See Boyer v. Keller Tool Co., 3 Cir., 127 F. 130; General Electric Co. v. George J. Hagan Co., D.C.W.D.Pa., 38 F.2d 995, 999, 1000.

■ Machines for the butt welding of strips or skelp to be used in hollow tubing or piping were old at the time of the McBerty invention. Machines for the removal of the flash or burr at the joint of strips welded together were old. Machine or machines containing a combination of butt welding and flash stripping were old. However, for a considerable period of time prior to the invention contained in the McBerty patent, persons skilled in the art of electric welding and flash stripping had tried to find a means of welding the butts of strips and removing the flash or burr so as to make a good commercial joint. They all failed. McBerty succeeded. The machine of the McBerty patent contains a new combination of old elements which co-act with each other to produce a new and useful result. That result is the production of a joint between successive separate coils of material, which joint is of a good commercial quality and like the physical structure, granular structure, and surfaces of the material of the strips which are joined together. The joint is produced within the time limitations of a continuous machine beyond the welder. His machine was a commercial success. In my opinion, the claims involved contain invention.

Plaintiff claims that defendant infringed the McBerty patent; that the combined electric welder and flash stripper of the McBerty patent and that of the machines manufactured and sold by the defendant are substantially the same, and that they are identical in operation and results.

Defendant claims that defendant's apparatus does not infringe Claim 1 of the McBerty patent, for the reason that its apparatus is not a machine; that it does not include a flash stripper; that it does not permit clamping of the material between the shear blades and that it has no "traction means forming part of said stripper." Substantially the same contention is made by defendant as to Claims 4, 12 and 13.

In Union Paper Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, it is stated: "Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

■ In Sanitary Refrigerator Co. v. Alexander Winters et al., 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147, and Allen Filter Co. v. Star Metal Mfg. Co. et al., 3 Cir., 40 F.2d 252, it is held that substantial equivalents are deemed the same thing in the law so that if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same even though they differ in name, form or shape. Mere colorable departures from the patented device do not avoid infringement.

The machine of plaintiff and the machines of defendant weld the butt end of strips in substantially the same way. In each of said machines the welder and the stripper adjoin each other. While they are separate from each other, yet they co-act. The welding and stripping operations are substantially the same. They are both capable of acting upon continuously moving material. The means to permit such

movement are substantially the same, or at least the means provided by defendant in its pinch rolls are substantially the equivalent of the means provided in the patent in action. I conclude that the machines made by the defendant infringe the claims involved in the McBerty patent.

 Plaintiff contends that it is entitled to an accounting from defendant for profits and damages, by reason of machines made and sold by the defendant from the time that McBerty talked to Bedell, an employee of defendant (the exact date not being given), in which conversation it is contended that McBerty told Bedell that if defendant infringed the patent in action, it would be held liable.

Defendant contends that it did not have the notice required by the applicable statute until December 28, 1937, and that there is no proof that defendant manufactured or sold machines alleged to infringe the McBerty patent subsequent to that date. R.S. Sec. 4900, 35 U.S.C.A. § 49, provides that: "It shall be the duty of all patentees and their assigns and legal representatives, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that the same is patented; either by fixing thereon the word 'patent,' together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice: Provided, however, That with respect to any patent issued prior to April 1, 1927, it shall be sufficient to give such notice in the form following, viz.: 'Patented,' together with the day and year the patent was granted; and in any suit for infringement by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented."

In Dunlap v. Schofield, 152 U.S. 244, 247, 14 S.Ct. 576, 577, 38 L.Ed. 426, it is stated: "The clear meaning of this section is that the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of his right, either to the whole public, by marking his article 'Patented,' or to the particular defendants, by informing them of his patent, and of their infringement of it."

In General Electric Co. v. George J. Hagan Co., D.C.W.D. Pa., 40 F.2d 505, 507, the Court, in a Per Curiam opinion, stated: "In this case defendant had knowledge of plaintiff's patent in 1919. It built furnaces thereunder, under an oral license of plaintiff from 1919 to 1923; it conducted negotiations with plaintiff about a renewal license, or license from February to September, 1923. At no time did plaintiff comply with the statutory provisions of notice to the public by marking, and at no time did plaintiff either verbally or in writing, notify defendant that it was infringing the patent in suit. It follows, therefore, that plaintiff is not entitled to an accounting for profits and damages."

See, also, Steinthal v. Arlington Sample Book Co., 3 Cir., 94 F.2d 748.

The notice required by the statute was not given. There was no actual notice to the defendant prior to the letter from plaintiff's attorneys dated December 27, 1937, which was received by defendant, December 28, 1937. The oral notice given by McBerty to Bedell, an employee of defendant, was not notice to the defendant. The burden rested upon the plaintiff to prove that the receipt of such a notice and the communication thereof to the defendant was within the authority of the employee. Plaintiff failed to meet this burden. The evidence offered showed that he did not have authority in such matters. It should also be noted that in the alleged oral statement made by McBerty to defendant's employee, that he did not state that defendant was infringing the McBerty patent. There was no proof of manufacture or sale by defendant of machines which infringed the claims of the McBerty patent involved, subsequent to the notice of December 28, 1937. I, therefore, conclude that plaintiff is not entitled to an accounting for profits or damages.