BEVERIGE ICE MARKETERS, Inc. v. BATEMAN FOUNDRY & MACHINE CO. et al.

Civ. No. 4028.

United States District Court
N. D. Texas, Dallas Division.

Oct. 14, 1950.

William D. Hall, Washington, D. C., Charles O. Shields, Dallas, Tex., for plaintiff.

S. Austin Wier, Howard E. Moore, Dallas, Tex., for all defendants.

Cecil L. Wood, Fort Worth, Tex., for defendant Bateman Foundry & Machine Co.

J. B. Perry and P. A. Weatherred, Dallas, Tex., for defendants J. Wesley Edens, Sr., and J. Wesley Edens, Jr.

ATWELL, Chief Judge.

Plaintiff declares upon patent No. 2118796, issued to Kelvin T. Orrison, in 1938, for a process in the making of ice units. The defendants make, sell and operate machines for making ice particles for sale in packages.

The testimony discloses that patentee Orrison, from the patent file introduced in evidence, had sought a patent in 1932 but had not succeeded in securing the patent. That application was abandoned and his new application filed and the patent issued under the above number.

In the meantime the process and methods disclosed in the patent had been in current use in Washington, D.C., Los Angeles, California, Columbus, Ohio, Maryland and New York.

The defendants, therefore, claimed anticipation in both actual practice and in literature, as well as that disclosed in six prior patents, one of which was a French patent, and another of which was an English patent, and the other four were United States patents.

An invention or discovery cannot be patented in the United States, where it has heretofore been patented or described in a printed publication abroad. Changes of shape or form to produce new functions and results, may be patentable. But patentable novelty includes more than mere changes from prior inventions, since the changes must amount to invention. Mere novelty of form is insufficient. Novelty may reside in the arrangement or continuation of old elements whereby an advantageous result is accomplished. Anticipation prevents invention, if before the date when the patentee made it. Such anticipation may consist of prior patents or publication, and it is of no consequence that the patentee made the invention by his own efforts and thought, and in ignorance of prior invention of another, since the fact of prior invention is what controls.

The test of process infringement is not similarity of apparatus, but whether the process is utilized.

The burden is on the plaintiff to prove infringement, and letters patent are prima facie evidence of patentability.

Defendant must show prior use beyond a reasonable doubt.

[8] In considering whether there is invention, everything known to prior art through patents, publications, and use must be considered.

Progressive adaptations by mechanical skill in art, without the exercise of inventor's genius, is not invention.

One who secures a monopoly by patent, may not have victory, if guilty of laches.

An old process, for a new purpose, is not invention, and may not be advantaged by the patentee thereof.

Bearing in mind such fundamentals, I turn now to plaintiff's patent, the title to which has been attacked, but finally agreed to insofar as two counties in Texas are concerned.

The testimony shows, and the court finds, that the attorney of the patentee is a part owner of the patent at this time.

The patent itself declares that it is an ice product, and process of making the same. The product of ice, and the process of making it, that is what he advises the people that he patents.

And then, in his specifications, he advises "that one of the objects of my invention is to provide a commercially feasible supply of crushed, graded ice, in a readily available packaged form for dispensing by drug stores, ice cream parlors, hotels, restaurants, and the like."

I find as a fact that that process was done, and anticipated in California, Washington, Ohio, Maryland, and, New York, before this patent was issued.

Another object set out in the specification, is: "Another object is to produce, as a new product, clean, discreet, free flowing, sparkling, crystal clear lumps of ice, free from snow, and, preferrably of predetermined graded sizes."

That also had been accomplished in the territories and places that I have just mentioned.

A further object says, "This specification is a process for making such a product in a cheap and practical manner."

Further down, he says, "In making my new product, I produce a large block of ice in a can, as the block finishes freezing, I remove the liquid core, and supply fresh, clear water thereto, all as in the customary commercial manner, thereby eliminating cloudy core that would otherwise form. When there is cloudy ice on the top part of the block, this is sawed off so that the resultant block is substantially all solid, transparent ice."

I find that that, too, had been done before this patent was issued, and that had been done in the territories of the United States that I have already mentioned.

Specifications continue, "This block of ice is then put through an ice crusher, and, screened to predetermined grades, or, sizes. Usually, I produce three grades, rice, pea, and, chestnut, comparable to the same grades that are found in anthracite coal."

That, I find, has been done, not only in territories I have mentioned, but also in certain of the prior patents, which have been cited by the defendants.

Further reading from the specifications, "In carrying out the screening operation, I use any suitable type of vibrating screen. Vibrating screen is the well known name that is applied in the art to distinguish that type of shaking a screen that is characterized by a high frequency vibration and a small amplitude."

The specification itself concedes that this screen operation and vibration is old, it does not belong to him, and it is not his invention.

"By way of example, I have illustrated in the drawings a suitable type of vibrating screen that can be used," and then he refers to figures 1, 2, and, 3, which are, of course, a part of the patent.

I have gone over that portion of the specifications in order that they may assist us in reading the claims of the patent, because, the claims may not be exactly photographed by the specifications, but the specifications are a sort of magnifying glass that assists us in reading the claims, and the claims are largely repetitious, and they speak about ice, an article of manufacture. The patentee has not manufactured anything. He takes something that had been manufactured, and crushes it up, and runs it over his screens, screens of different meshes, and naturally, of course, we do not need to have that explained to us. Naturally, the large lumps stay on top of the screen, and the smaller ones go through it, and so on, and so on. It is just a well known mechanical result.

And, this free flowing ice, you find it in the very part of the specification itself, it said "below freezing." You find that, "This precaution is desirable so that the pieces of ice will not melt, and, later freeze togeth-

er.". So, in the very specifications we find that that process is recommended.

I find that the plaintiff's title to the patent is valid, insofar as two counties in Texas are concerned, one of which is Navarro, the place where the defendants were carrying on their business.

I find that there is no infringement. That the process had been anticipated and in actual operation in the places mentioned in the United States, and in patents which have been presented by the defendants, all of which anticipated the plaintiff's patent, and its claims as against these defendants are void.

It follows that judgment must go for the defendants.