ORRISON et al. v. C. HOFFBERGER CO.

No. 6276.

United States Court of Appeals,
Fourth Circuit.

Argued June 23, 1951.

Decided July 26, 1951.

William D. Hall, Washington, D. C. (Richard S. Wright, Baltimore, Md., and Nelson Moore, Washington, D. C., on the brief), for appellants.

Charles M. Thomas, Washington, D. C. (Sidney W. Russell, Washington, D. C., and Morton J. Hollander, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges

SOPER, Circuit Judge.

This is a suit for infringement of patent No. 2,118,796 issued May 24, 1938 to Kelvin T. Orrison upon an application filed January 31, 1938. The patent covers a free-flowing discrete, crushed ice product suitable for beverages and a process for its manufacture, which comprises crushing a block of ice into pieces of various size, including snow, and subjecting the mixture to a vibrating screening motion to separate the mixture into one portion that consists of snow and other portions which consist of free-flowing lumps of ice. The patent has not been put to a commercial use by the owners, nor has any ice manufacturer accepted a license to practice it. In a suit in Texas the patent was declared void by reason of prior use and prior art. Beverige Ice Marketers v. Bateman Foundry & Machine Co., D.C.N.D.Tex., 93 F.Supp. 535. An appeal from this decision is pending.

The defendant, a Maryland corporation engaged in the manufacture of ice, asserted defenses of non-infringement, invalidity through anticipation by prior art, prior use and publication, indefiniteness of claim, laches and fraudulent conduct in securing the patent. The District Judge found no merit in the defense based on fraud, recognized the defendant's conces-

sion that if the patent is valid the defendant infringes, and determined that the patent was not anticipated by prior art patents or publications. However, relying chiefly on a prior use of the invention by the City Ice and Fuel Company of Columbus, Ohio, he held the patent invalid; and hence he found it unnecessary to go into the question of plaintiffs' laches in bringing suit. This conclusion is abundantly supported by the evidence, and the prior use at Columbus constitutes so clear an anticipation of the patent, that in affirming the judgment, we find it unnecessary to consider any other defenses.

The patent in suit embraces nine claims of which five product claims and two process claims are being litigated. As stated in the patent, one object of the invention "is to provide a commercially feasible supply of crushed, graded ice in a readily available package form for dispensing by drugstores, ice cream parlors, hotels, restaurants and the like." A second object "is to produce as a new product, clean discrete free-flowing sparkling crystal clear lumps of ice free from snow and preferably of predetermined graded sizes." The object with regard to the patented process was to produce this ice "in a cheap and practical manner." Three representative claims are set forth in the margin.[1]

The ice product has been adequately described. The process for its manufacture consists of two phases. (1) Crushing a block of ice with the core removed, thereby producing a mixture of various sized pieces of ice including snow. (2) Subjecting this mixture to a rapidly vibrating motion on a series of horizontal, slightly sloped screens with interstices decreasing in size from the highest to the lowest so that various sized lumps of ice fall off the ends of the different screens into separate containers, free from snow and hence free-flowing and non-adherent to each other.

Ordinarily, lumps of melting ice in contact will regulate, i.e., freeze together again. Orrison claims that his process and product are new by emphatically asserting that his product is free from snow and non-regelable. These characteristics are achieved by using only transparent blocks of ice, i.e., blocks of ice with the cloudy core removed prior to crushing, and by using low amplitude, high frequency vibrating screens which round the lumps of ice and jar free from them any snow created by the crushing process. This "snow" is highly objectionable when accompanying ice to be used in beverages because it melts too fast and because it causes lumps of ice to pack together by regelation, thereby inconveniencing any dispensing operation.

The District Court found that the evidence was insufficient to show a reduction of the invention to practice prior to January 31, 1938, the filing date of the application for the patent. Orrison claims that the invention was conceived and reduced to practice in 1935 when he accepted employment by the Terminal Ice & Fuel Company of Washington, D.C., and learned something of the ice industry. This employment, according to Orrison, began in the early spring and lasted until the latter

---

1. Claim No. 1, a broad product claim, reads: "As an article of manufacture, a free-flowing mass of ice in bulk form produced by crushing ice into lumps and then screening to produce discrete pieces free from snow, the sharp edges of the pieces produced by crushing being rounded by abrasion from the screening motion."

Claim No. 5, a narrower product claim, reads: "A package of free-flowing clean discrete transparent lumps of ice, substantially uniform in size, the shape of the lumps being irregular and generally characterized by a fractured surface contour that is uneven, the contents of the package being free from snow and the lumps being non-adherent."

Claim No. 7, a process claim, reads: "The method of making a free-flowing mass of ice comprising crushing a block of ice thereby producing a mixture of pieces of ice of various sizes including snow, subjecting the mixture to a vibrating screening motion of high frequency and low amplitude to separate the mixture into one portion that contains the snow and into another portion that consists of free-flowing discrete lumps free from snow, and carrying out the screening operation at a temperature where there will be no substantial melting of the ice."

part of the year. According to Jennings, a co-owner of the patent, he and Orrison were employed in 1935 to promote the sales of ice in the summer time. They testified that Orrison conceived the invention and made a small machine or model for the manufacture of the patented product at his home, and later set it up in the company's plant, and that all of this was done in the late spring or early summer of 1935. Neither the machine nor any drawings of it were produced and the location of the machine in the company's plant was denied by persons connected with the company. The judge correctly found the proof insufficient to establish the earlier date.

Orrison and Jennings also produced copies of printed pamphlets or advertising matter which bore the name of the Terminal Ice & Fuel Company, and contained a description of the ice product subsequently covered by the patent, and pictured Orrison and Jennings using the kind of ice described in the patent in a highball glass. They testified that they composed the advertisements and that in October, 1935, several hundreds of two of the pamphlets were printed. The testimony of the witnesses for the parties to the case differed as to whether these circulars were distributed to the trade in 1935 or in 1936, and also as to whether Orrison or the company developed the invention. A determination of these issues would be important if it was necessary for a decision of the instant case for if Orrison was the inventor and the publication took place more than two years before his application date the product claims would be invalid under the statute. Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 59 S.Ct. 675, 83 L.Ed. 1071; Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Maibohm v. RCA Victor Co., 4 Cir., 89 F.2d 317; and if the invention was developed by the company rather than by Orrison, the publication would constitute an anticipation of the product claims if it took place at any time before the patent application was filed. Parks v. Booth, 102 U.S. 96, 102, 103, 26 L.Ed. 54; Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 555, 20 L.Ed. 33. See Moore v. B. & O. R. Co., 4 Cir., 37 F.2d 884, certiorari denied 282 U.S. 857, 51 S.Ct. 33, 75 L.Ed. 759.

It is, however, unnecessary to decide these matters since it is not disputed that the operations of the City Ice & Fuel Company at Columbus took place before Orrison entered the employ of the Terminal Ice & Fuel Company and became interested in the subject matter of the patent, and since we agree with the District Court that the Columbus operations anticipated the Orrison claims and precluded their patentability. Conclusive proof of but a single instance prior use is sufficient to defeat the patent. Brush v. Condit, 132 U.S. 39, 10 S.Ct. 1, 33 L.Ed. 251; Coffin v. Ogden, 18 Wall. 120, 85 U.S. 120, 21 L.Ed. 821; Twentieth Century Machinery Co. v. Loew Mfg. Co., 6 Cir., 243 F. 373. Cf., Gayler v. Wilder, 10 How. 477, 51 U.S. 477, 13 L.Ed. 504.

In December, 1934 the City Ice & Fuel Company ordered ice crushing and sizing equipment from the Jeffry Manufacturing Company which was delivered and put into use in February of 1935. Blocks of ice were first fed into a heavy cog wheel crushing machine referred to as an "ice dicer." The emerging pieces of ice of various sizes were then transported by conveyor belt to the high end of a large cylindrical wire mesh screen which then performed the same function as Orrison's horizontal vibratory screens. This cylindrical screen was the F.S. Converse rotary coal screen, patent No. 1,079,543, suitable for sizing "coal, stone or other screenable substances" and was composed of three sections each having a different wire mesh increasing in size from the higher section to the lower. It was set at an incline and rotated on its axis so that as the crushed ice came off the conveyor belt, the ice proceeded down the incline by the force of gravity and at the same time was juggled about by the rotary motion. The snow and finer ice fell through the first section of the rotary screen, and pieces of increasing uniform sizes fell through the second and third sections, respectively. Photographs of this ice machine taken in 1935 were identified and appear in the

record. They were considered bona fide by the District Judge. Uncontradicted testimony of Feight, the designer of the machine, of Holters, the general manager of City Ice & Fuel Company, of Behmer, the photographer of the machine, of Mock, the mechanic who supervised assembly of the machine and of Williamson, an engineer of City Ice & Fuel Company, as well as the purchase order, the design tracings, the invoice and check covering the purchase and the photographs established beyond doubt the use of the Columbus, Ohio machine as early as February, 1935.

The plaintiffs admit that there is no patentable distinction between the separate vibratory screens specified in the Orrison patent and the rotary screen used at Columbus,[2] and there is no dispute that sized ice was produced, but the plaintiffs contend that there is no proof that the ice product of the Columbus machine was the discrete, free-flowing transparent ice such as would anticipate Orrison. They assert that the cloudy core was not first removed from the Columbus ice, that the bruising of the ice as it went through the heavy cog wheel crusher clouded it even more, and that the rotary screen was motivated by hand crank and hence moved so slowly that it did not round the edges of the ice or remove the snow adhering to it.

The defendant's evidence is that the large rotary screen, operated by a separate motor that had been supplied by Mock, rotated from 20 to 35 r.p.m. at a speed "fast enough to properly size the ice." For six consecutive years, beginning in 1935, the equipment was operated daily to produce ice of four different sizes, the three smaller sizes being used in the trade. It had a capacity of three to four tons an hour indicating a more rapid operation than the plaintiffs contend. There was testimony that the surface contour of the ice product was very irregular and that there was a little, "but very little" snow or fine ice in the product of the two larger sized sections of the rotary screen.

The District Judge disposed of the plaintiffs' argument that the characteristics of the Columbus ice product differed from that claimed by Orrison in the following words:

"It is true that in Columbus, beginning in 1934, this ice machine may not have been doing as good a job as Orrison did, but it did substantially the same thing in substantially the same way, and made substantially the same product.

"When so-called common ice, with a core, is put through a crusher, all of the particles that come out will not be clear. Orrison recommends that the core be first taken out, so that the entire cake of ice before crushing is transparent. However, this is a question of degree,—a distinction without a difference. In other words, it is too much of a refinement to say that in 1934, the machine at Columbus did not produce substantially the same character of lumps of ice that the Orrison patent calls for, albeit they may have been somewhat less clear and free-flowing." [97 F. Supp. 694.]

This conclusion is essentially a finding of fact and we cannot say, from the record in this case, that this finding is clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672. Indeed we are in substantial agreement with the court's finding.

The fact that the Columbus manufacturers did not remove the core of snow from a block of ice before crushing it and screening the particles is not of vital importance and does not distinguish their operations from those described in the patent. Orrison himself did not regard the removal of the core of snow as an essential part of the patented process since he merely recommended it in the specifications but did not insert it as an element of the claims. It is obvious that if one does not want any snow in the crushed mixture it should be removed before the ice is crushed. In any event the snow is screened in the subsequent operation and even if this method is not as efficient as that described

---

2. The defendant used a rotary screen; hence if this use was to infringe, the plaintiffs could not admit distinction.

in the patent, it is substantially in accordance therewith.

About four months after the entry of the judgment below the plaintiffs moved for a new trial on the ground of newly discovered evidence consisting primarily of a comparison between depositions with respect to the Columbus operations offered by the defendant in this case with depositions of the same witnesses when offered by the defendant in the trial in Texas. It was alleged in the motion that the witnesses in the Texas trial not only contradicted their prior testimony in the pending case but gave testimony showing that the latter involved "down-right perjury." The District Judge found that the allegations of perjured testimony were completely unsupported by the evidence and in overruling the motion for a new trial, awarded the defendant $500 counsel fees and $50 expenses since he considered the motion vexatious and unjustified. The allegations of perjury are based largely on the fact that it was conceded in the Texas depositions that one of the photographs of the ice machine introduced in evidence by the defendant in the instant case was a composite photograph in which the figures of certain persons had been introduced to give it a more lifelike appearance. The record in the pending case, however, shows that the plaintiffs had knowledge at the trial in the District Court that the photograph was a composite picture and offered proof thereof, but the District Judge rejected the proof and made the assumption that the photograph was composite and stated that there was no suggestion of fraud in that connection and no weakening of the testimony given in support of the Columbus operations by the introduction of the photograph.

We are in accord with this finding of the court. It lay within the discretion of the court to refuse the motion for a new trial and we find no abuse of discretion in this case. Likewise the award of counsel fees upon the entry of judgment in the patent case lies in the sound discretion of the trial court under the statute, 35 U.S.C.A. § 70; and since the evidence justified the finding of the court that there was no reasonable ground for the prosecution of the motion, it cannot be said that there was abuse of discretion in this instance. See Laufenberg, Inc. v. Goldblatt Bros., 7 Cir., 187 F.2d 823; Blanc v. Spartan Tool Co., 7 Cir., 178 F.2d 104; Aeration Processes v. Walter Kidde & Co., 2 Cir., 177 F.2d 772; Dixie Paper Cup Co. v. Paper Container Mfg. Co., 7 Cir., 169 F.2d 645; National Brass Co. v. Michigan Hardware Co., D.C.W.D. Mich., 75 F. Supp. 140. Since the award was made in refusing to strike out the judgment in the case, it fell within the terms of the statute which permits the court in its discretion to award reasonable attorneys' fees to the prevailing party upon the entry of judgment in a patent case.

Affirmed.