**AMERICAN CHAIN & CABLE CO., Inc. v. ROCHESTER ROPES, Inc.**

No. 6408.

United States Court of Appeals
Fourth Circuit.

Argued June 23, 1952.

Decided Oct. 13, 1952.

Parker, Chief Judge, dissented in part.

Dean S. Edmonds, New York City, (Peter Otey Miller, Richmond, Va., and W. Brown Morton, Jr., New York City, on brief), for appellant and cross-appellee.

Robert W. Byerly, New York City, and Thomas B. Gay, Richmond, Va., (John H. Glaccum, New York City, on brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought for the infringement of United States patent No. 2,036,-393 issued to A. J. Briggs on April 7, 1936 upon an application filed May 2, 1925. The patent relates to the fabrication of stranded steel wire rope in which each component is permanently set in the helical form which it will possess in the rope and the result is that a structure is produced which is substantially stress-free when the strands are wound helically about a central core. The patent purports to cover the machine and the process for the manufacture of the product, as well as the product itself. Claims 15 to 27 are involved in this suit.

The patented product is ordinarily called preformed rope to distinguish it from the ordinary product of prior years in which the helical form is imparted to the wire strands by the act of winding them about the core, so that in the finished product they are subject to pent up stress and must be bound or "seized" at the ends. The new product is more readily handled and has a longer life than the old.

The District Judge dismissed the complaint on the ground that the patent was invalid since it did not involve invention. He also indicated that the discovery was not first conceived by Briggs but by E. A. Conner, who subsequently applied for a patent more than two years after the product had gone into public use.

The essence of the patent is the combination in one structure of means for pre-

forming the wire into helices and means for the manufacture of the completed product on a planetary rope-making machine. Both means were old in the art. The judge found that a device for forming wire into helices before laying the strands in place had been perfected prior to 1922 and that the planetary rope making machines had been in general use in the industry for many years prior to 1920; and he concluded that the combination of the two well known methods did not require invention. The consideration of this subject is mingled in the opinion of the court with a discussion of the facts which led the court to find that Conner, rather than Briggs, was the inventor of the new process. But the identity of the inventor does not determine the quality of the discovery since that depends upon the state of the prior art and the existence of inventive thought in the new disclosure.

■■■ We think that the facts show that the disclosure of the patent constituted a new and useful contribution to the art which rises to the dignity of invention. It is familiar law that a new combination of old elements, which produces a new result in a manner not obvious to those skilled in the art, is patentable. U. S. Industrial Chemical Co. v. Theroz Co., 4 Cir., 25 F.2d 387; Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550. In Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 150, 71 S.Ct. 127, 129, 95 L.Ed. 162, the court pointed out that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention, and that the use of the well known terms "combination" and "aggregation", as tests to determine invention, results in nothing but confusion. The court said, pp. 151–152:

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or

different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L. Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."

The disclosures in the Briggs patent in our opinion meet this test when considered in the light of the established facts relating to the wire rope industry before and after the disclosure was made. The superiority of preformed rope was shown by prior patents such as the United States patent to Moxham of 1884; the Lake British patent of 1884; the Cheesman British patent of 1885, and the United States patent to Wiswell of 1883, and the United States patent No. 1,518,253 to Conner in 1924 and the United States patent to Gammeter of May 7, 1929. The efforts of these inventors were not crowned with success but when the method of the patent in suit was disclosed it was immediately recognized as the solution of the problem and universally adopted by the industry. The superiority of the new product is generally recognized. It sells for a higher price than ordinary rope and leading rope manufacturers in the United States, Canada and Great Britain have taken licenses or sub-licenses under it and have paid large sums for the privilege. The record shows that during the period from 1931 to 1947 the sales of preformed rope by the American Chain and Cable Company, the plaintiff and the owner of the patent, and by the licensees, amounted to many millions of dollars. In the year 1944 the sales of preformed rope by the plaintiff company amounted to $12,248,869.07 and the sales by licensees amounted to $34,738,011.75, or a total of $46,986,880.82.

By 1936 practically all the makers of rope in the United States had become licensees, including the defendant in this

case. The defendant was a licensee from March 30, 1936 to October 6, 1948 and paid the required royalty for eleven and a half years. On March 8, 1948 the Supreme Court decided the case of United States v. Line Material Co., 333 U.S. 287, 68 S.Ct. 550, 92 L.Ed. 701, wherein it condemned as violations of the Sherman Act, 15 U.S.C.A. § 1 et seq., price fixing arrangements between patentees and licensees. The licensing agreements in the case at bar contained price fixing provisions. It was apparently on this ground that the defendant discontinued the payment of royalties in the fall of 1948. The plaintiff wrote to licensees eliminating the illegal provisions from the agreements, but the defendant, while continuing to use the invention, refused to make further payments to the plaintiff.

It is suggested that the commercial success of the patent as indicated by the general acceptances of licenses by leading manufacturers in the industry is not entitled to the usual weight in this case because of the price fixing agreement in the original licenses. This argument, however, is not convincing since the consumers of the product were obviously willing to acquire the new product notwithstanding the fact that it brought a higher price than ordinary rope which was still manufactured in large quantities. The circumstance merely demonstrates the superiority of the product.

The question as to whether Briggs or Conner was the inventor is of the utmost importance and is not free from difficulty. Both were employed by the American Chain and Cable Company, the plaintiff in this case, to study the possibility of making a preformed rope. Two applications for a patent were filed in their respective names by attorneys of the Company and assigned to it. The Briggs application was filed on May 2, 1925. The Conner application[1] was prepared and filed by the same attorneys on June 23, 1927, but was abandoned in May, 1929, after the examiner in the Patent Office had called the attorneys'

attention to the Briggs French patent and after the attorneys had discovered that the Conner application was not tenable since it had been filed more than two years after a public use of the invention which occurred in February, 1924.

Thereupon, claims of the Conner application, which clearly showed the combination of the preformer with the planetary machine of the invention in suit, were added by amendment to the pending Briggs application and the Conner application was withdrawn. By this amendment the Briggs application was radically changed. It was originally designed to eliminate the use of dies or mandrels in the preforming step in the Conner process and to substitute rotating roller heads therefor. When Briggs first approached the company's lawyer with respect to his invention in 1925 he brought a pencil sketch which showed only a preformer roller head instead of the quill type of preformer. The sketch did not show whether a planetary or non-planetary machine was contemplated. The lawyers obtained a drawing of a standard rope making machine and used it so as to show the Briggs roller mounted thereon, and included the whole in the application which they filed in the Patent Office. This application contained 45 claims of which only Claim 41, when considered in connection with the drawings of the machine, was thought to include the planetary feature. The final result was that the Briggs application was held by the Patent Office to be broad enough to support the specific claims of the Conner patent and the application was granted on April 7, 1936 after surviving interference proceedings, to which reference will hereafter be made.

The decision to abandon the Conner application and press the Briggs application was made by the plaintiff's attorneys in 1929 after a difficult and painstaking investigation into the circumstances which attended the evolution of the discovery five years before in 1923 and 1924. They reached the conclusion that the plaintiff company first instructed Conner to investi-

---

1. Prior thereto, U. S. patents Nos. 1,513,-583 and 1,518,253 showing the use of a quill type of preformer, had been issued to Conner in 1924 on application filed in 1922.

gate the possibility of adapting to rope-making purposes a process of preforming steel wires, which was used under the Pratt patent in the manufacture of grommets for automobile tires; and that Conner, after months of experimentation, succeeded in building a preforming rope making machine and making certain quantities of rope but that the machine was not a success; and that Briggs was then employed to examine the machine, and made certain experiments, and finally suggested the combination of the preformer and the planetary machine which solved the problem.

The final attribution of the invention to Briggs by the attorneys was made after they had interviewed Briggs, Conner and a number of officials and employees of the plaintiff company, two of whom, an administrative officer and an engineer, testified in this case in 1950 as to what had taken place in regard to the manufacture of preformed rope in 1923 and 1924. Their testimony is clear and precise while that of Conner is uncertain as to details and fails to make a clear showing of priority over Briggs. It is noticeable, however, that neither party to the suit ventured to ask Conner whether Briggs had in fact made the suggestion which solved the difficulty.

If attention is confined to the testimony of these men, the proof is heavily weighted on the side of Briggs; but the District Judge found the company's witnesses on the point unconvincing and, in reaching the conclusion that Conner was the inventor, gave greater weight to the actions pursued by the plaintiff company in the proceedings in the Patent Office. In April and May, 1929, the Conner application was placed in interference with other applications for kindred inventions, and the necessity of clear proof to meet the opposition to the Conner patent became apparent. In 1925 and 1927, however, when the Briggs and Conner applications were respectively filed, there were no conflicting interests since both applications were the property of the plaintiff company. While this situation prevailed the attorneys for the company filed the Conner application in 1927 with knowledge on their part of the Briggs application which they had filed in 1925, and supported the Conner application by his affidavit that he was the first inventor. A similar application, supported by similar affidavits of Conner and two other employees of the company, was presented to the Canadian Patent Office in the same year. It was only after the company was confronted with the certainty of a fight in the Patent Office and the realization that the Conner application was too late, that the investigation was made and the substitution of the Briggs for the Conner application in the United States Patent Office took place. Without challenging the bona fides of the investigation made by the attorneys in 1929 it is manifest that they were hardly in position to make an unbiased finding of facts and that considerable difficulty attended the task of determining which person among a number of investigators who had been engaged for a long time in experimental work five years before was entitled to the credit for finding the correct answer to the problem.

The weight to be given to the final action of the Patent Office in the interference proceedings in favor of the Briggs application is affected by the circumstances under which it was rendered. The contest in the Patent Office lay between the Briggs application and the application of one Charles C. Sunderland who made claim to an invention prior to Briggs and assigned his application to the John A. Roebling Sons Company. There was no contest in the Patent Office between Conner and Briggs since the Conner application had been withdrawn and only the Briggs application was pressed by the company's attorneys. The issue between Briggs and Conner was decided by them since they were of the opinion that it was not justiciable in the Patent Office and the Patent Office shared this opinion, as is shown by the following statement which concludes the finding that Briggs was the inventor to the effect: "It is well settled, moreover, that the question of inventorship by a third party[2] cannot be considered in an inter-

2. In this case Conner.

ference proceeding. Foster v. Antisdell, 88 O.G. 1527, 14 App.D.C. 552. It must accordingly be held that Briggs is entitled to March 1924 as a date for reduction to practice."

After the decision by the examiner in favor of the Briggs application, Roebling appealed to the Board of Appeals and while the appeal was pending the parties to the interference entered into an agreement of settlement. By this settlement Roebling agreed to withdraw its appeal and to grant to the plaintiff company a license under certain patents and patent applications and Roebling was given a license to use the Briggs patent and other patents of the plaintiff company and was allowed a credit of $250,000 on the royalties that might accrue under the licenses. After the Roebling appeal was withdrawn further proceedings took place before the examiner in respect to the validity of the Briggs invention, and the examiner made an adverse decision from which the plaintiff company took an ex parte appeal to the Board of Appeals in which it was successful. The plaintiff relied heavily upon the commercial success of the patent as evidenced by the large number of licenses which had been accepted by the industry.

■. It is a fair characterization of the evidence now before the court with respect to the identity of the inventor of the process to say that a reasonable argument can be based upon the facts supporting either side of the controversy, and hence we find it impossible to say that the conclusion reached by the District Judge after a careful and unbiased hearing of the evidence was clearly erroneous.

■ We are in agreement with the conclusion of the District Court that the counterclaim of the defendant for the restitution of the royalties paid by the defendant should be denied. The counterclaim is based on the charge that the owner of the patent did not come into the Patent Office with clean hands and was guilty of reprehensible conduct during the progress of the Briggs patent through the Patent Office. Specifically it is charged (1) that the plaintiff secured the Briggs patent by making a settlement with the Roebling Company, so that the facts in regard to the merits of the case were improperly suppressed; and (2) that the plaintiff, in listing the number of the licensees in the Patent Office, as evidence of commercial success, withheld the fact that the license agreements contained price-fixing provisions. We do not think that these circumstances are sufficient to prove the charge of fraud in the absence of convincing proof that the plaintiff was aware that Briggs was not the inventor. Since that question is in doubt the circumstances related are insufficient to sustain the accusation that the truth was deliberately suppressed in order to obtain the patent.

■■ We are of the opinion, however, that the additional order of the District Court allowing the defendant counsel fees in the amount of $35,000 should be reversed. While the allowance of reasonable counsel fees to the defendant in a patent case is within the discretion of the District Court under 35 U.S.C.A. § 70, we have held that the discretion should not be exercised except in situations involving vexatious and unjustified litigation on the part of the patentee. See Phillips Petroleum Co. v. Esso Standard Oil Co., D.C.Md., 91 F.Supp. 215, affirmed 4 Cir., 185 F.2d 672; Orrison v. C. Hoffberger Co., 4 Cir., 190 F.2d 787. The difficulties and uncertainties presented by this case justified its submission to the courts for final decision.

The judgment of the District Court is affirmed with respect to the dismissal of the bill of complaint, but is reversed with respect to the allowance of counsel fees to the attorney for the defendant.

Affirmed in part and reversed in part.

PARKER, Chief Judge (dissenting in part).

I concur in the view that the patent here in suit involved patentable invention; and I think that Briggs was clearly shown to be the inventor. This matter was dealt with by the Patent Office in the interference proceeding as follows:

"The senior party, Briggs, was associated with the American Chain Company in 1923 and 1924 as consulting engineer. The evidence offered on his behalf shows that one Conner, an em-

ployee of that company, had developed a machine with which experiments were conducted at Bridgeport, Connecticut during the latter part of February, 1923. This machine was similar to that called for by the counts, except that it did not have a planetary action. Briggs testified that he suggested at that time that such action should be provided and this testimony is corroborated by that of Dechant. Since the planetary type of machine was old, and since the manner of combining it with that of Conner is obvious, it is thought that this suggestion shows a conception by Briggs of the invention in issue as early as March 1, 1923, and he is therefore accorded this date. * * * It is urged, however, that it has not been shown that Briggs was the inventor of the development considered. In this connection, it is to be noted that Briggs was evidently connected with the work and made at least one suggestion which was incorporated in the machine."

I think that under the evidence before us this decision of the Patent Office was clearly correct and that there is nothing in the record which justifies a holding that the idea which led to successful combination of a preforming device with a planetary machine was not furnished by Briggs or that his patent application in 1925 was not intended to cover this basic concept.