**UNITED PARTS MANUFACTURING COMPANY, Appellant,**

v.

**LEE MOTOR PRODUCTS, INC., and Joseph Kumin, Appellees.**

**No. 13558.**

United States Court of Appeals
Sixth Circuit.

April 22, 1959.

B. Gordon Aller, Chicago, Ill., Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief, for appellant.

Robert S. Sanborn, New York City, Bates, Teare & McBean, Cleveland, Ohio, on brief, for appellees.

Before SIMONS and MILLER, Circuit Judges, and GOURLEY, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellant, United Parts Manufacturing Company, is engaged in the manufacture and sale of replacement parts for motor vehicles, including hydraulic brake cylinders used in the hydraulic brake systems. It is the owner, by assignment from the patentee, of two patents, namely, Larson No. 2,412,587, issued December 17, 1946, hereinafter referred to as Larson 587, and Larson No. 2,435,837, issued February 10, 1948. These patents are concerned with a structure whereby leaky and defective hydraulic brake cylinders employed in the hydraulic brake systems of motor vehicles are restored to safe operating condition. Appellant brought this action against the appellees alleging infringement by them of these patents, seeking preliminary and perma-

nent injunctions and damages. Appellees denied validity of the patents and infringement. The District Judge held that the claims of patent Larson 587 were invalid and not infringed by the appellees and dismissed the complaint. Larson No. 2,435,837 is an improvement over and a continuation in part of the earlier patent, and since its validity must stand or fall on the validity of the earlier parent patent, the case was tried and considered by the District Court, and will be considered on this review, on the merits of the parent patent, Larson 587.

The conventional master hydraulic brake cylinder consists of a gray-iron casting divided into two compartments; an upper compartment which is a brake fluid reservoir tank and a lower compartment which is bored in the form of a horizontal cylinder. The lower compartment contains the operating parts of the mechanism. These component working parts consist of a master cylinder piston actuated by a push rod which is connected by a link to the brake pedal; a resilient rubber cup positioned at the head of the piston, the flexible end of the cup being in wiping or sealing relationship with the walls of the cylinder; a valve seated at the far end of the cylinder; and a coiled compression spring positioned between the piston head with its rubber cup and the valve. When the driver depresses the brake pedal, the push rod, one end of which is seated in the master cylinder piston, pushes the piston and the resilient rubber cup at its head forward, the cup wipes along the bore of the cylinder compressing the fluid, and the pressure engendered thereby is transmitted through the valve into the brake line forcing the brake shoes to expand against the rotating brake drums. Friction brings the vehicle to a halt. Upon release of the brake pedal the coiled spring returns the piston and cup to the original or normal position permitting the valve to leave its seat and the fluid flows back into the cylinder and the reservoir, thus releasing the pressure upon the brakes.

If the smooth continuity of the cylinder bore is for any reason impaired, contact between the bore and the rubber cup is broken, the fluid will leak or seep backward past the cup and the cylinder head, dissipating the pressure in the cylinder and rendering the brake ineffective. It is necessary if the brake is to operate effectively that the cylinder bore remain smooth and unmarred. However, after use the cylinder bore becomes pitted and corroded due to condensation or other deleterious conditions. The pits and corrosions in the cylinder bore cause the cup to lose contact with the wall on the forward stroke of the piston with the consequent backward leakage of the fluid. The wiping action of the cup, because of such leakage, can no longer create the pressure in the cylinder necessary to force the fluid into the line and, consequently, there is brake failure.

Under such conditions, it had been the usual practice to discard the casting and replace it with a new one. In addition to being an expensive practice, World War II presented an additional complication. Gray-iron was one of the allocated materials and new castings became unavailable. Accordingly, the honing method was used throughout the industry to meet this problem. A mechanic was furnished with a honing tool and manually removed just enough of the metal in the cylinder bore to eradicate the pits and corrosion found therein. It was necessary to maintain a uniform bore diameter so that the piston could operate therein. It was necessary to keep that diameter within such limits as would permit the use of standard size pistons and other operating parts. It was necessary to do this work at a cost which would enable the restored cylinder to be sold at a profit. The honing method had a number of disadvantages. There was no way of ascertaining, before work was started, how deep the pits were in the bore or how great the corrosion. In some instances, so much metal had to be removed from the bore that the casting became too weak to be used. In other in-

stances, it because necessary to remove so much of the metal that the diameter of the bore was enlarged and oversize pistons and cups were required.

Larson 587 met the problem by providing a lined hydraulic brake cylinder wherein a sleeve or liner was secured in the cylinder bore without the use of any third member and in a manner so that the liner, when it in turn became pitted or corroded, could easily be replaced with a new one. The lined cylinder was equivalent in all respects to the cylinder bore of a new casting and would take standard size operating parts such as pistons and cups. A general description of the patent is as follows. The lower cylindrical chamber is enlarged by boring throughout its length except for a portion approximately ¼″ wide at the right or high-pressure end. The unbored portion forms a ¼″ shoulder at that point in the cylinder whose diameter is less than that of the main body and which provides a press-fit with the outside diameter of a sleeve inserted therein. A tubular steel sleeve having an inside diameter identical to the diameter of the cylinder of the original casting and with its left end flared outwardly to form a truncated conical portion of greater diameter than the new bore is loosely inserted into the enlarged cylinder until it reaches the restrictive shoulder. The sleeve is then pressed home until it is completely enclosed in the cylinder. The shoulder forms a press-fit with the right end of the sleeve and the left or flared end of the sleeve, being under compression due to the resiliency of the steel, forms a gravity type seal with the cylinder wall at the low-pressure end. The inside diameter of the sleeve being the same as the diameter of the original casting, the piston and the cup are of standard size. The sleeve itself, although self-supported in the cylinder without the use of any third element, is actually spaced from the cylinder wall except at its two ends and may, therefore, be quickly and easily replaced.

The patent has four claims. Claim No. 1, which is typical, reads as follows:

"A cylinder lining comprising the combination thereof with a cylinder having a longitudinal inner bore of larger diameter than said liner, a shoulder on the said inner bore adjacent one end of said cylinder which press fits said liner, one end of said liner tapering outwardly, whereby when pressed into position the tapered portion will be compressed forming a tight union with the cylinder wall."

Appellees contend that Larson 587 is invalid by reason of anticipation by the prior art and by prior use and because it lacks invention. The District Judge found for the appellees on each of these contentions.

With respect to the prior art and prior use, Boulton, No. 2,500,340, was chiefly relied upon by both the appellees and the District Judge. This reliance raises two questions which we first consider. Larson 587 issued December 17, 1946, several years before Boulton issued on March 14, 1950. However, the Boulton application was filed on September 22, 1945, shortly prior to the Larson 587 application on November 15, 1945. To meet this priority of the Boulton application, Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Application of Beck, 155 F.2d 398, 401, 33 CCPA 1060; Weckerly v. Coe, 71 App.D.C. 379, 110 F.2d 700, 702, Larson claimed a date of invention by him prior to his application date of November 15, 1945. Marconi Wireless Telegraph Co. of America v. United States, 320 U.S. 1, 34–35, 63 S.Ct. 1393, 87 L.Ed. 1731; Loom Co. v. Higgins, 105 U.S. 580, 594–595, 26 L.Ed. 1177. Appellees, shortly after filing their answer, served interrogatories on appellant, requiring it to state if, at the trial, it would claim a date of invention by Larson prior to November, 1945, and to furnish copies of the documents on which it would rely if it sought to establish an earlier date. Appellant answered the interrogatory by stating that it would claim a date of invention "Prior to but at least as early as June

26, 1945." This would have placed the date of invention prior to the Boulton application date of September 22, 1945. Appellees in turn attempted to rely upon a prior use of the Boulton invention as early as October, 1944, which would have anticipated Larson 587. Orrison v. C. Hoffberger Co., 4 Cir., 190 F.2d 787; Hydraulic Press Mfg. Co. v. Williams, White & Co., 7 Cir., 165 F.2d 489, 492–493.

■ At the trial, appellant offered evidence to show that the first conception of the invention was made by Larson in January or February, 1944, that subsequently models were made and tested by Larson and the appellant on certain designated motor vehicles, that these tests continued for a period of months, and that when these tests were concluded and proved satisfactory, commercial operation started. The District Judge refused to admit such evidence and refused to allow appellant to introduce any evidence which would tend to establish an invention date for Larson earlier than June 26, 1945, ruling that appellant was prevented from establishing an earlier date by reason of its answer to the interrogatory. We agree with appellant's contention that this incorrectly restricted its scope of proof with respect to the earliest date of the Larson invention. We do not think that the answer to the interrogatory is to be construed as being a statement by appellant that it made no claim for a date of invention earlier than June 26, 1945.

■ Under the view which we take of the case, the ruling was not prejudicial. An invention date earlier than June 26, 1945, was necessary for the purpose of antedating appellees' claim of prior use of the Boulton invention in October, 1944. We will not undertake to restate the evidence with respect to this alleged prior use of the Boulton invention but our review of it convinces us that it does not support "the heavy burden of persuasion which rests upon one who seeks to negative novelty in a patent by showing prior use." Smith v. Hall, 301 U.S. 216, 233, 57 S.Ct. 711, 718, 81 L.Ed. 1049.

With respect to an unpatented device, claimed to be a complete anticipation of a patent in suit, it is necessary to prove such use by clear and convincing evidence. Petersime Incubator Co. v. Bundy Incubator Co., 6 Cir., 135 F.2d 580, 582; Twentieth Century Machinery Co. v. Loew Mfg. Co., 6 Cir., 243 F. 373, 379; Pleatmaster, Inc., v. J. L. Golding Mfg. Co., 7 Cir., 240 F.2d 894, 898. We are of the opinion that the District Judge was in error in finding prior use of the Boulton invention in October, 1944. With this alleged prior use of the Boulton invention eliminated from the case, an invention date for Larson in June, 1945, was sufficient to give it priority over the Boulton application date of September 26, 1945.

In the trial, appellees attempted to use witness Glassman as an expert witness with respect to the prior art. The District Judge found Glassman unqualified to give expert testimony and refused to permit him to so testify. Appellees' counsel then asked the Court to accept counsel's explanation of the prior art patents and was permitted to do so at some length. He was not cross-examined by appellant. Appellant contends that counsel in effect testified as an expert witness without having been sworn and that the District Judge improperly relied in part upon this unsworn testimony in making his ruling.

■ It is much better practice for counsel in a case not to testify in behalf of his client. Except in unusual circumstances it is disapproved by Canon 19 of the American Bar Association Canons of Professional Ethics. But it is not prejudicial error on the part of the Court to receive such testimony if otherwise competent. Although appellant's brief implies that the witness was not cross-examined because he was not sworn, we are not referred to any part of the record showing that objection was made to the failure to have the witness sworn or that failure to administer the oath to the witness was the reason he was not cross-examined. The administering of the oath to the witness was waived. Wil-

coxon v. United States, 10 Cir., 231 F.2d 384, 387; State of Missouri v. Hope, 100 Mo. 347, 13 S.W. 490, 8 L.R.A. 608; Beausoliel v. United States, 71 App.D.C. 111, 107 F.2d 292, 294.

It appears from the oral opinion of the District Judge that his ruling was based in part upon his conclusion that the ideas of Boulton and Larson were quite synonymous; that the Boulton patent had all the elements of the Larson patent and they were mechanically identical; and that Boulton beat Larson to it. The ruling that Boulton beat Larson to it is based on the finding of prior use of the Boulton invention in October, 1944. Since we have set aside that finding there is no finding in the record to support the ruling. Although Boulton has the earlier application date, it would not be controlling if appellant's contention was upheld that the Larson invention occurred at least as early as June 26, 1945. The District Judge made no finding on this issue. Under the view which we take of the case, the absence of such a finding is not material.

The District Judge also considered the prior art, irrespective of Boulton. The prior art principally relied upon by appellees were Evens, No. 1615, issued May 25, 1840, Naves, No. 72,884, issued December 31, 1867, and La Tourette, No. 242,781, issued June 14, 1881.

Evens discloses a vertical water pump having a wooden cylinder and a copper lining. Naves discloses a structure similar to Evens except that both cylinder and liner are made of wood. La Tourette discloses a metal cylinder for a wooden pump. There is a shoulder formed in the wooden cylinder head. The bottom of the liner is sharpened into sort of a knife edge, and the metal cylinder is driven into the wood. The upper end of the cylinder has a flare or flange or taper. It is a sharp ram which is rolled or formed in some way on the top edge of the cylinder and in driving the metal cylinder in the wooden tank it also digs into the wall and acts as a support.

As stated by the District Judge, each of these patents was a pump, dealing with the pumping or lifting of water, and showed that liners and cylinders are not new. The gray-iron casting containing the cylinder was not the product of either party.

Appellant does not contend that liners and cylinders are new. It does contend that the methods used in the prior art to secure the liner and the cylinder by pins and rivets or by driving the sharpened end of the liner into the wooden stock could not be used with metal liners and metal cylinders and that the Larson invention solved a long unsolved problem of securing a metal liner and a metal cylinder without the use of any third member, with the result that the liner could easily be removed and replaced cheaply and without skilled labor. It relies in part upon the resulting strong commercial success without any appreciable amount of advertising.

■ The District Judge expressed the opinion that every idea Larson had and every idea Boulton had, had been utilized by others ahead of them. He made a finding that Larson 587 was invalid for lack of invention over the prior art. We are of the opinion that the finding must be sustained. Sec. 103, Title 35, U.S.Code; General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 915; Thomson Spot Welder Co. v. Ford Motor Co., 6 Cir., 281 F. 680, 683–684, affirmed 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098; General Metals Powder Co. v. S. K. Wellman Co., 6 Cir., 157 F.2d 505, 509, certiorari denied 329 U.S. 812, 67 S.Ct. 632, 91 L.Ed. 693, rehearing denied 330 U.S. 854, 67 S.Ct. 861, 91 L.Ed. 1296.

■ The question whether an improvement requires mere mechanical skill or the exercise of the faculty of invention is one of fact. Thomson Spot Welder Co. v. Ford Motor Co., supra, 265 U.S. 445, 446, 44 S.Ct. 533, 68 L.Ed. 1098; O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, 666; Stauffer v. Slenderella Systems of California, Inc., 9 Cir., 254 F.2d 127; Steffan v. Weber Heating & Sheet Metal Co., 8 Cir., 237 F.2d 601, 602. In our opinion the finding of the District Judge is not clearly

erroneous and is accordingly accepted on this review. Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A.; Cutting Room Appliances Corp. v. Weatherbee Coats, Inc., 6 Cir., 250 F.2d 39.

The judgment is affirmed.